UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: 9:16-cv-81798-DMM

TTT Foods Holding Company LLC,
a Florida limited liability company,

      Plaintiff,

v.

BEATRICE NAMM, an individual,
JONATHAN NAMM, an individual, and
DELUXE GOURMET SPECIALTIES LLC, a
New Jersey limited liability company,

      Defendants.

_____/

## MOTION FOR SUMMAY JUDGMENT AS TO COUNTS I, II, III, V, VI, AND VII OF THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, TTT Foods Holding Company LLC ("TTT Foods"), pursuant to Federal Rule of Civil Procedure Rule 56, hereby files this *Motion for Summary Judgment as to Counts I, II, III, V, VI, and VII of its Amended Complaint* against Beatrice Namm ("Mrs. Namm"), Jonathan Namm ("Jon Namm") (together, the "Namms") and Deluxe Gourmet Specialties, LLC ("Deluxe") (the "Motion"), and in support thereof states as follows:

### INTRODUCTION

The facts are undisputed that after Brooklyn's Best, LLC (the "Judgment Debtor") obligated itself on two promissory notes on March 27, 2015, Mrs. Namm, its sole member, had over $300,000 of revenue from the sale of the Judgment Debtor's product deposited into a TD Bank account no. 6618 owned by Deluxe. See Par. 5, 10-12, 25-27 of *Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment* filed contemporaneously herewith and hereafter referred to as "Plaintiff's Statement". Of this amount, Mrs. Namm caused more than $118,000 to be transferred to or for the benefit of the Namms for the payment of personal family expenses. See Plaintiff's Statement, Par 40. It is also unrefuted

{1955/000/00362856}      1

that the Judgment Debtor transferred over an additional $100,000 to or for the benefit of the Namms. See Par. 34, Plaintiff's Statement.   The foregoing funds were used by the Namms for the payment of various personal family expenses, including Jon Namm's mortgage and vehicle obligations. See Par. 34-35, 37-39, Plaintiff's Statement.   The unrefuted deposition testimony demonstrates that said transfers were made to evade paying TTT Foods on its claim and to continue supporting the Namms' personal lifestyle.  See Plaintiff's Statement at Par. 12, 34, 37-39, and 48-49.

Finally, after TTT Foods obtained judgments in April and May of 2016, Mrs. Namm began conducting a similar business with many of the same customers as the Judgment Debtor and Deluxe through a new entity, JMT Food Group, LLC ("JMT Food") that was organized on January 15, 2015. See Par. 30, Plaintiff's Statement. JMT Food has been funded by revenue received from selling the Judgment Debtor's product, which has enabled the Namms to continue to evade paying TTT Foods and support their lifestyle.  See Par. 41 and 44, Plaintiff's Statement. Based upon the overwhelming uncontroverted evidence, summary judgment is warranted on TTT Foods' fraudulent transfer, breach of fiduciary duty, successor liability, and alter ego claims set forth in the Amended Complaint (the "Complaint") [ECF No. 8].

<u>**MEMORANDUM OF LAW**</u>

**I.   The Summary Judgment Standard.**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  The movant bears the burden of establishing that there is an absence of any genuine issue of material fact and that, by a prima facie showing, it is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323-24. "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A moving party may discharge its burden by showing that there is an absence of evidence to support an essential element of the nonmoving party's case, such as when such the moving party uses summary

judgment to challenge the legal sufficiency of affirmative defenses. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citations omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). Once the movant has made a prima facie showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *See Celotex*, 477 U.S. at 324. In this case, the undisputed evidence shows that TTT Foods is entitled to summary judgment on six counts alleged in the Complaint.

**II.    Undisputed Facts Establish that the Namms are Liable for Fraudulent Transfers From the Judgment Debtor and Deluxe Under Counts I, II and III.**

It is undisputed that since March 27, 2015, the Judgment Debtor transferred $102,522.44 to and for the benefit of the Namms (the "Judgment Debtor Transfers"), and since March 31, 2015, Deluxe transferred $118,737.56 to and for the benefit of the Namms (the "Deluxe Transfers") (collectively, the "Transfers"). See Par. 34 and 40, Plaintiff's Statement. The Transfers were deposited into the Namms' joint accounts, and used for the payment of household expenses, such as mortgage payments relating to property owned by Jon Namm, and Jon Namm's vehicle and insurance expenses. See Par. 34, 37-40, Plaintiff's Statement. Jon Namm conceded that he benefited from the Transfers that were deposited into the joint accounts as said funds were used to pay household expenses. See Par. 47 and 48 of Plaintiff's Statement. Moreover, JMT Food was capitalized with over $15,000 in transfers by Deluxe, which is all revenue that should have been deposited into the Judgment Debtor's bank account. See Par. 41-43, Plaintiff's Statement. Since December 1, 2015, JMT transferred $21,988.08 to or for the benefit of Mr. and Mrs. Namm (the "JMT Transfers"). See Par. 44, Plaintiff's Statement. As a result, TTT Foods has been damaged for the total amount of the Transfers because said funds were unavailable to satisfy the Indebtedness[1] owed to TTT Foods.

TTT Foods' claims against the Judgment Debtor and Deluxe arose before the Transfers were made. In March of 2015, the Judgment Debtor owed $170,000.01 to TTT Foods under the Notes. See Par. 5, Plaintiff's Statement. In June of 2015, TTT Foods initiated the State Court Suit against the Judgment Debtor. See Par. 14, Plaintiff's Statement. By May of 2016, TTT

---

[1] Capitalized terms not defined herein are have the meanings provided for in the *Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment* attached hereto.

Foods obtained the Judgments against the Judgment Debtor.   See Par. 15-17, Plaintiff's Statement.   Before the Deluxe Transfers were made, beginning on March 31, 2015. Mrs. Namm had begun directing the Judgment Debtor's revenue to Deluxe, which gave rise to TTT Foods' claims of successor liability against Deluxe discussed below.  See Par. 11, Plaintiff's Statement; see infra p. 9-11.

### a. TTT Foods is Entitled to Summary Judgment on its Actual Fraudulent Transfer Claims Under 726.105(1)(a).

In Count I of the Complaint, TTT Foods seeks relief for actual fraudulent transfer pursuant to section 726.105(1)(a) of the Florida Statutes.   In order to prevail under section 726.105(1)(a), a plaintiff must demonstrate that a debtor made a transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor[.]" Fla. Stat. § 726.105(1)(a).   Section 726.105(2) sets forth a nonexclusive list of factors a court may consider, including that: the transfer was to an insider, the transfer was concealed, the debtor had been sued or threatened with suit before the transfer was made, the debtor removed or concealed assets, the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred, the debtor was insolvent or became insolvent shortly after the transfer was made, and the transfer occurred shortly before or shortly after a substantial debt was incurred.  Fla. Stat. § 726.105(2).   "While a single badge of fraud may amount only to a suspicious circumstance, a combination of badges will justify a finding of fraud."  *In re Aqua Clear Techs., Inc.*, 361 B.R. 567, 579 (Bankr. S.D. Fla. 2007).

### i. The Undisputed Facts Establish Numerous Badges Including Transfers to Insiders after Substantial Debt is Incurred, the Removal and Concealment of Assets, the Concealment of Transfers, and a Pending Lawsuit.

The undisputed facts establish numerous badges of fraud.  First, the Namms are insiders[2] of the Judgment Debtor and Deluxe. See Par. 25-27, Plaintiff's Statement.[3] Second, the Transfers were made after the Judgment Debtor and Deluxe incurred substantial debt through the

---

[2] Fla. Stat. § 726.102(8)(b) defines an "Insider" as a director, officer or person in control of the debtor and a relative of said persons.
[3] The Namm's personal tax return at Exhibit 24 shows that Jon Namm is married to Mrs. Namm.

Settlement and Notes.  See Par. 5, Plaintiff's Statement   Many of the Transfers also occurred after TTT Foods initiated the State Court Suit, and the State Court entered the Judgments.  See Par. 34 and 40, Plaintiff's Statement.   Mrs. Namm concealed the Judgment Debtor Transfers by not listing them in discovery in aid of execution.  See Par. 36, Plaintiff's Statement.  Also, the Namms concealed the Transfers occurring in 2015 by not reporting such amounts on their personal 2015 tax return. See Par. 52-56, Plaintiff's Statement.  Third, Mrs. Namm removed and concealed over $300,000 in revenue generated by the Judgment Debtor by redirecting such revenue into Deluxe's TD account no. 6618. See Par. 10-12, Plaintiff's Statement.   The foregoing action was taken to intentionally avoid paying the Indebtedness owed to TTT Foods, and to continue supporting the Namms' lifestyle.  See Par. 10-12, Plaintiff's Statement. Mrs. Namm admitted that she had such revenue deposited into Deluxe's bank account because of the State Court Suit, and she needed to pay her personal mortgage. See Par. 10-12, Plaintiff's Statement.  In Mrs. Namm's continued efforts to conceal the Judgment Debtor's assets, JMT Food was capitalized with over $15,000 in transfers by Deluxe, which is all revenue that should have been deposited into the Judgment Debtor's bank account. See Par. 41-44, Plaintiff's Statement.  The Namms essentially looted the Judgment Debtor to pay their personal expenses, and avoid paying the Indebtedness owed to TTT Foods.

### ii.  The Judgment Debtor and Deluxe Were Insolvent at the Time of the Transfers.

A debtor is insolvent when "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."  Fla. Stat. § 726.103(1).  Also, a "debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Fla. Stat. § 726.103(2).  Mr. King's expert report establishes that the Judgment Debtor was insolvent during the period of March 27, 2015 through June 30, 2016.  See Par. 57-59, Plaintiff's Statement.  It is evident and undisputed that based on the month end balance sheets reconstructed by Mr. King, the Judgment Debtor's assets never exceeded its liabilities.  See Par. 57-59, Plaintiff's Statement.  Similarly, the undisputed facts establish that Deluxe was insolvent as of the dates of the Deluxe Transfers. See Par. 60 and 61, Plaintiff's Statement.  Mrs. Namm conceded that Deluxe and the Judgment Debtor are one and the same and that the business could not pay the Indebtedness to TTT Foods'

and that the company was always behind in payments to its manufacturer, Kaltec. See Par. 33, 60-61, Plaintiff's Statement.

### iii.   The Namms Did Not Provide Reasonably Equivalent Value.

Judgment Debtor and Deluxe did not receive reasonably equivalent value for the Transfers.  Jon Namm admitted that he provided no consideration for the Transfers. See Par. 47, Plaintiff's Statement.   While Mrs. Namm has defended that the Transfers were compensation for her personal services, there is no evidence to support this allegation.  Instead, the evidence shows that the Transfers were not for compensation.   No bank records suggest that the Transfers constitute salary for Mrs. Namm.  See Par. 50, Plaintiff's Statement.  No accounting records have been provided that show that the Transfers constitute salary for Mrs. Namm.   The Namms' personal 2015 tax return shows gross income of $47,846 and Jon Namm testified that he makes about $40,000 per year working for the Daily News.  See Par. 52, Plaintiff's Statement.   Jon Namm conceded that the Transfers were not reported on the Namms' personal 2015 tax return. See Par 53, Plaintiff's Statement.  The bank records show that the Namms received approximately $120,000 in both 2015 and 2016, yet the Namms paid no self-employment tax for 2015, and did not attach Schedule SE to their 2015 personal return to report self-employment income.  See Par. 45, 46 and 54, Plaintiff's Statement.  See also http://www.irs.gov/taxtopics/tc554.html for the Internal Revenue Service's instructions concerning payment of self-employment taxes.

Moreover, even assuming *arguendo* that the Transfers were paid to Mrs. Namm as salary (which they were not), she would not be entitled to the amount of the Transfers because her efforts did not cause the Judgment Debtor to prosper.  *See In re Kane & Kane*, No. 09-15556-EPK, 2013 WL 1197609, at *12 (Bankr. S.D. Fla. Mar. 25, 2013) (stating that if the company's principal's "efforts were in fact not sufficient to cause the Debtor to prosper, then those efforts would not be entitled to remuneration[,]" and the "fact that the Debtor would not have existed but for the efforts of [the principals] does not mean that their efforts resulted in value to the Debtor equal to the compensation they received.").   Instead, Mrs. Namm caused harm to the Judgment Debtor by improperly directing its revenue to Deluxe and JMT Food, and otherwise breaching her fiduciary duties and subjecting Deluxe to successor liability, as discussed below. See infra p. 9-11. See *In re Trafford Distrib. Ctr., Inc.*, 431 B.R. 263, 288 (Bankr. S.D. Fla.

2010) (concluding that despite transfers of funds being characterized as "management fees" such transfers were fraudulent as the company's principal "provided little or no consideration to the [company] in exchange for these transfers.").

>    **b. TTT Foods is Entitled to Summary Judgment on its Fraudulent Transfers Claims Under Section 726.105(1)(b).**

In Count II of the Complaint, TTT Foods seeks relief for constructive fraudulent transfer pursuant to section 726.105(1)(b) of the Florida Statute.  Under section 726.105(1)(b), a plaintiff must demonstrate that a debtor made a transfer:

> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(b).

As discussed above, the undisputed facts establish that the Judgment Debtor and Deluxe made the Transfers without receiving reasonably equivalent value, and were insolvent and unable to pay their debts as they became due.  *See* supra p. 5-7.  Further, it is undisputed that at the time of the Transfers, the Judgment Debtor and Deluxe had incurred, and reasonably should have believed that they would incur, debts beyond their ability to pay as they became due, including the claims of TTT Foods under the Settlement, Notes, and State Court Suit.  See Par. 5 and 14, Plaintiff's Statement.

>    **c. TTT Foods is Entitled to Summary Judgment on Fraudulent Transfers Claims Under Section 726.106(1).**

In Count III of the Complaint, TTT Foods seeks relief for constructive fraudulent transfer pursuant to section 726.106(1) of the Florida Statute.  Under section 726.106(1), a plaintiff must demonstrate that a debtor made a transfer, after the plaintiff's claim arose "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

Fla. Stat. § 726.106 (1).   As discussed above, the undisputed facts establish that after TTT Foods' claims arose, the Judgment Debtor and Deluxe made the Transfers without receiving equivalent value, and while they were insolvent.  See supra p. 5-7.

### d.   The Defendants' Affirmative Defenses Fail as a Matter of Law.

The affirmative defenses raised by the Defendants against Counts I, II, and/or III are legally insufficient as a matter of law, and do not prevent the Court from entering summary judgment in favor of TTT Foods.  With respect to the first affirmative defense, the Transfers were not made in the ordinary course of business or financial affairs of the Judgment Debtor or Deluxe.  As discussed above, the Transfers did not constitute salary, were concealed, and were to and for the benefit of the Namms and to the detriment of the Judgment Debtor and its creditors. See supra p. 4-7.  With respect to the second affirmative defense, as discussed above, the undisputed facts establish that the Judgment Debtor did not receive reasonably equivalent value in exchange for the Transfers.  See supra p. 6-7.

The third affirmative defense fails because, as discussed above, the undisputed facts establish that with respect to Count I, the Namms did not take the Transfers in good faith and for reasonably equivalent value.  See supra p. 4-7.   The Namms were insiders of the Judgment Debtor and Deluxe, who improperly benefited from the Transfers, and provided no reasonably equivalent value.  See supra p. 4-7.    The fourth affirmative defense fails for the same reasons. The undisputed facts establish that Transfers were made with the actual intent to hinder, delay and defraud TTT Foods, and were not made in good faith, or in the exercise of good business judgment.  See supra p.4-7.

The fifth, sixth and seventh affirmative defenses relate to Count IV, which TTT Foods is not pursuing through the Motion.  Because these defenses do not apply Counts I, II and III, they do not prevent the Court from granting the Motion.  Further, even assuming arguendo that the defenses could apply to Counts I, II, and III (which they cannot), such defenses fail as a matter of law because the Defendants provided no new value for the Transfers, the Transfers were not made in the ordinary course or financial affairs of the Judgment Debtor, the Transfers were not made in a good faith effort to rehabilitate the Judgment Debtor, and the Transfers did not secure value given for that purpose or an antecedent debt.  Instead, the opposite occurred.  The Namms

stripped the Judgment Debtor of its value to pay their personal expenses, and avoid paying the Indebtedness owed to TTT Foods.

The eighth affirmative defense fails as a matter of law because, for the reasons stated above, the Namms are not good faith transferees and did not provide value to the Judgment Debtor for the Transfers.  See supra p. 4-7.  Thus, they are not entitled to any lien, or right to retain interest in the asset transferred.  Nor are they entitled to the enforcement of any obligation incurred or reduction in the amount of the liability on the judgment.  For the same reasons, the ninth affirmative defense fails, and the Namms are not entitled to any set off of value from any award to TTT Foods.

With respect to the thirteenth affirmative defense, as discussed above, the undisputed facts establish that Transfers benefitted both Mrs. Namm and Jon Namm because the funds were deposited into their joint accounts, used to pay family expenses, including the mortgage relating to real property owned by Jon Namm, and transferred to JMT Food to capitalize Mrs. Namm's new company.  See supra p. 3-5.   As a result, the Namms should be held jointly and severally liable for the amounts of the Transfers.

Based upon the foregoing, the undisputed facts warrant entry of judgment in favor of TTT Foods on its fraudulent transfer counts against the Namms, jointly and severally, in the amount of the Transfers.

**III.    The Undisputed Facts Establish that Deluxe is Subject to Successor Liability Because There was a De Facto Merger Between the Judgment Debtor and Deluxe and Deluxe is a Mere Continuation of the Judgment Debtor.**

In Count VI of the Complaint, TTT Foods seeks to hold Deluxe liable for the Indebtedness owed by the Judgment Debtor to TTT Foods under a theory of successor liability. Under Florida law, a corporation's liability may be imposed on its successor corporation if: i) the successor assumes the obligations of the predecessor, ii) the transaction is a de facto merger, iii) the successor is a mere continuation of the predecessor, or iv) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.  *See Bernard v. Kee Mfg. Co.,* 409 So.2d 1047, 1049 (Fla. 1982); *Lab. Corp. of Am. v. Prof'l Recovery Network*, 913 So.2d 266, 269 (Fla. 5th DCA 2002).

To find a de facto merger, "there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location; a continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities." *Amjad Munim v. Azar*, 658 So.2d 145, 153-154 (*citing Arnold Graphics Indus. v. Indep. Agent Ctr.*, 775 F.2d 38, 42 (2d. Cir. 1985). "The bottom-line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other." *Onion Int'l Fin. Ltd. v. Hoiyong Gems Corp.*, 616 F. Supp. 351, 361 (D.C.R.I. 1985. "A de facto merger occurs when one corporation is absorbed by another, i.e., there is a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders." *See 300 Pine Island Assoc. v. Steven L. Cohen & Assocs.*, 547 So.2d 256 (*citing Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.*, 523 So.2d 740, 742 n.1 (Fla. 5th DCA 1988)).

To determine that a successor entity is merely a continuation of a predecessor, it must be generally established that there is a change in form, but not in substance. *See Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.* 832 So.2d 810, 815 (Fla. 2d DCA 2002) citing *Amjad Munim*, 648 So.2d at 153-54.  Several factors can establish successor liability under a mere continuation theory, including: (1) identity of the sole officer and shareholder of both predecessor and successor corporations; (2) same attorney and resident agent; (3) same business; (4) substantially the same customers; (5) substantially the same employees; (6) same toll free telephone and fax numbers; (7) same accounting system and computerized data base. *See Lab. Corp. of Am. v. Professional Recovery Network*, 813 So.2d 266, 269 (Fla. 5th DCA 2002). Another factor that points to successor liability is the "transfer of assets of a corporation without consideration or for grossly inadequate consideration to a successor corporation to the prejudice of creditors for the benefit of the same individuals who constitute the beneficial owners of each of the corporations involved. *Id.* at 271, citing *Munim*, 648 So.2d at 154.

The undisputed facts establish that there was a de facto merger between the Judgment Debtor and Deluxe.  Mrs. Namm has been the sole owner of the Judgment Debtor since the Settlement, and she has been the sole member of Deluxe since its formation. See Par. 25 and 26, Plaintiff's Statement.  Mrs. Namm has overseen the day-to-day operations of the Judgment

Debtor and Deluxe since the Settlement. See Par. 27, Plaintiff's Statement.  The Judgment Debtor and Deluxe operated out of the same location, 85 Corona Court, Old Bridge, New Jersey 08857, which is the Namms' personal residence.  See Par. 28, Plaintiff's Statement.   Mrs. Namm directed over $300,000 of the Judgement Debtor's revenue to Deluxe to avoid TTT Foods' claims against the Judgment Debtor.  See Par. 11, 12, Plaintiff's Statement.   The Judgment Debtor and Deluxe share the same customers, sell the same product, and use the same manufacturer and freight companies. See Par. 29, 31, 32, Plaintiff's Statement.  Mrs. Namm conceded that the Judgment Debtor and Deluxe are one in the same.  See Par. 33, Plaintiff's Statement

Based on the foregoing, the undisputed facts also establish that Deluxe is a mere continuation of the Judgment Debtor.  Mrs. Namm has conceded that the two companies are the same.  Since the Settlement and during the relevant period, Mrs. Namm was the sole owner, and in charge of day-to-day operations, of the Judgment Debtor and Deluxe.   The Judgment Debtor and Deluxe operated from the sale location, sold the same product, and used the same vendors.

Based upon the foregoing, the undisputed facts warrant entry of judgment in favor of TTT Foods on its successor liability count against Deluxe under a theory of de facto merger, and mere continuation.  Deluxe should be held liable for the Indebtedness to TTT Foods under the Judgments.

## IV.   Undisputed Facts Establish that Mrs. Namm is the Alter Ego of the Judgment Debtor and Deluxe.

In Count VII of the Complaint, TTT Foods seeks declaratory relief that Mrs. Namm is the alter ego of the Judgment Debtor, and that under the doctrines of alter ego and piercing the corporate veil, Mrs. Namm is liable for the Indebtedness owed by the Judgment Debtor to TTT Foods.  The Eleventh Circuit has stated that for a claimant pierce the corporate veil in Florida, it must establish that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Eckhardt v. United States*, 463 F. App'x 852, 855-56 (11th Cir. 2012) (quoting *Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (Fla.Dist.Ct.App.2008)).   While the "alter ego issue is heavily fact-specific," the Eleventh Circuit has found alter ego liability on summary judgment. *See Eckhardt v. United States*, 463 F. App'x 852 (11th Cir. 2012) (affirming district court's decision that sole owner and president was alter ego of company); *Miller v. Harco Nat'l Ins. Co.,* 241 F.3d 1331 (11th Cir.2001) (affirming grant of summary judgment that no material dispute existed as to whether individual and corporation were alter egos).

"Piercing the corporate veil is proper if the corporation is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose."   *Eckhardt v. United States*, 463 F. App'x 852, 855 (11th Cir. 2012) (quotations omitted).   "The veil will be pierced and the corporate entity disregarded if it is shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing the corporate veil."   *Id*. at 856 (quotations omitted). "Improper conduct exists where a corporation is used "as a subterfuge to mislead or defraud creditors, to hide assets, to evade the requirements of a statute or some analogous betrayal of trust." *Id*. (quoting *Lipsig v. Ramlawi,* 760 So.2d 170, 187 (Fla.Dist.Ct.App.2000)).

The undisputed facts establish that Mrs. Namm is the alter ego of the Judgment Debtor. Mrs. Namm dominated and controlled the Judgment Debtor to such an extent that its independent existence was non-existent.   Since the Settlement, Mrs. Namm has been the sole owner, and in charge of the day-to-day operations, of Judgment Debtor, Deluxe and JMT Food. See Par. 25-27, Plaintiff's Statement.   While in such position, she improperly diverted over $300,000 of the Judgment Debtor's revenue to Deluxe to avoid paying TTT Foods, and support the Namms' personal lifestyle. See Par. 11, 12, Plaintiff's Statement.   She also dominated the Judgment Debtor to such an extent that she caused its corporate funds to be for her and Jon Namm's personal benefit through the Transfers.   *See Eckhardt v. United States*, 463 F. App'x 852, 856 (11th Cir. 2012) ("One important factor relevant to whether an individual dominates the corporation to such an extent as to negate its separate identity is whether corporate funds were used for the individual's benefit.").   Mrs. Namm caused the Transfers to occur to defraud the Judgement Debtor's creditors, including TTT Foods, and deprive the company of the means to

pay the Indebtedness owed to TTT Foods.  She also failed to properly wind up the Judgment Debtor's business.  Mrs. Namm stripped the Judgment Debtor of its value, diverted its revenue to Deluxe, left the Indebtedness to TTT Foods unpaid, and then voluntarily dissolved the company, and resigned as manager.  Mrs. Namm also used the Judgment Debtor's assets to capitalize her new business, JMT Foods, which has allowed her to fund her personal lifestyle and evade paying the Indebtedness owed to TTT Foods.

The Defendants' twelfth affirmative defense with respect to Count VII fails as a matter of law.  First, it is irrelevant that the Judgment Debtor was initially owed by both Mrs. Namm and TTT Foods.  The joint ownership ended when the parties entered into the Settlement in March of 2015.  See Par. 5, Plaintiff's Statement.  Mrs. Namm was the sole owner of the Judgment Debtor when the Transfers occurred, and when the Judgement Debtor's revenue was misdirected into Deluxe. See Par. 10-12, 25-27, Plaintiff's Statement.  Second, the purpose of the alter ego and veil piercing theory is to hold parties who improperly use a company liable for the debts of the company.   The fact that a creditor did not have the principal sign a guaranty is immaterial.  Third, by entering into the Settlement, TTT Foods did not agree to permit the Transfers to occur or to have the Judgement Debtor's revenue misdirected to Deluxe, or to be otherwise defrauded.  The twelfth affirmative defense is invalid, and does not rebut the undisputed facts that establish that Mrs. Namm is an alter ego of and the corporate veil should be pierced.

The undisputed facts establish that under the doctrines of alter ego and piercing the corporate veil, Mrs. Namm is liable for the Indebtedness owed to TTT Foods.

## V.   The Undisputed Facts Establish Mrs. Namm Breached Her Fiduciary Duties to the Judgment Debtor and TTT Foods.

In Count V of the Complaint, TTT Foods seeks to hold Mrs. Namm liable for breach of her fiduciary duty to the Judgment Debtor and TTT Foods.  Each manager owes fiduciary duties of loyalty and care to the limited liability company. Fla. Stat. § 605.04091(1).  "The duty of care in the conduct or winding up of the company's activities and affairs is to refrain from engaging in grossly negligent or reckless conduct, willful or intentional misconduct, or a knowing violation of law." Fla. Stat. § 605.04091(3).  The duty of loyalty includes:

(a) Accounting to the limited liability company and holding as trustee for it any property, profit, or benefit derived by the manager or member, as applicable: 1. In

the conduct or winding up of the company's activities and affairs; 2. From the use by the member or manager of the company's property; or 3. From the appropriation of a company opportunity;

(b) Refraining from dealing with the company in the conduct or winding up of the company's activities and affairs as, or on behalf of, a person having an interest adverse to the company, except to the extent that a transaction satisfies the requirements of s. 605.04092; and

(c) Refraining from competing with the company in the conduct of the company's activities and affairs before the dissolution of the company.

Fla. Stat. § 605.04091(2)(a).

 "The fiduciary duties of officers and directors are extended to the creditors of a corporation when the corporation becomes insolvent or is in the 'vicinity of insolvency.'" *Trafford*, 431 B.R. at 290; *Aqua Clear*, 361 B.R. at 575; *In re SOL, LLC*, No. 09-12684-BKC-AJC, 2012 WL 2673254, at *16 (Bankr. S.D. Fla. July 5, 2012) (concluding the principals of a limited liability company "owed a fiduciary duty to the [company's] creditors once the [company] became insolvent or was in the vicinity of insolvency."). "To permit corporate officers and director to use their fiduciary positions to obtain preferential treatment at the expense of third-party creditors is manifestly unfair." *Trafford*, 431 B.R. at 290.

The undisputed facts demonstrate that Mrs. Namm breached her duty of care and duty of loyalty to TTT Foods as a creditor of the Judgment Debtor by causing the Transfers to occur and improperly redirecting the revenue of the Judgment Debtor to Deluxe, and by voluntarily dissolving the Judgment Debtor and resigning as manager after stripping the Judgment Debtor of its value and by using the Judgment Debtor's revenue to capitalize JMT Food.  Mrs. Namm further breached her duty of care and duty of loyalty by treating the Judgment Debtor and Deluxe as one and the same.  She dominated and controlled Judgment Debtor and Deluxe at all relevant times.  She caused the Judgment Debtor to fail to adhere to any type of corporate governance, independence or formality.  Her improper use of Deluxe as a mere continuation and alter ego of Judgment Debtor has caused injury to TTT Foods.  Mrs. Namm made a profit and acquired other personal benefits and advantages in her dealings with Judgment Debtor and Deluxe, to the

detriment of Judgment Debtor and TTT Foods. As a result, TTT Foods has been harmed by the amount of the Transfers plus the JMT Transfers made to or for the benefit of the Namms.

The Defendants' affirmative defenses directed at Count V are legally insufficient as a matter of law. The Defendants' tenth and fourteenth affirmative defenses fail because, as discussed above, the Judgment Debtor was insolvent prior to and during the complained of conduct. See supra p. 5, 6. As a result, Mrs. Namm owed a fiduciary duty to the Judgment Debtor's creditors, including TTT Foods, and TTT Foods has standing to bring Count V. The Defendants' eleventh affirmative defense fails because the undisputed facts discussed above establish that Mrs. Namm did not exercise her business judgment in the operation of the Judgment Debtor. See supra p. 3-7. Based upon the foregoing, the undisputed facts warrant entry of judgment in favor of TTT Foods on its breach of fiduciary duty count against Mrs. Namm in the amount of the Transfers.

## VI. The Seventeenth and Eighteenth Affirmative Defenses are Legally Inadequate.

In the seventeenth and eighteenth affirmative defenses are legally inadequate. They appear to raise the same argument –that it would be inequitable to grant TTT Foods relief because TTT Foods has unclean hands. In support, the Defendants allege the following facts that occurred prior to the Settlement: i) TTT Foods was a part owner[4] of the Judgment Debtor through March 2015, ii) TTT Foods took advantage of Mrs. Namm's lack of experience and knowledge when it acquired its ownership interest, iii) TTT Foods controlled the Judgment Debtor's operations and finances before Mrs. Namm became its sole owner, and iv) Mrs. Namm previously sued TTT Foods' principal in January 2015 for allegedly violating an Asset Purchase Agreement dated December 11, 2012. The Defendants also allege the following facts that occurred after the Settlement: i) TTT Foods did not have Mrs. Namm sign a guaranty for the Notes; ii) TTT Foods prematurely declared that the Judgment Debtor was in default under the Notes, and iii) TTT Foods' counsel contacted the Judgment Debtor's customers and advised that future payments should be provided to said counsel because the Judgment Debtor was in default

---

[4] The Defendants allege that TTT Foods was a 50% owner; however, TTT Foods was only a 49% owner. See Par. 3 and Exhibit 2, Plaintiff's Statement.

under the Notes, which interfered with its' business relationships with its customers and ability to repay the Notes.

As an initial matter, these two affirmative defenses are inapplicable because Counts I, II, III, V, VI, and VII seek to recover damages, and not injunctive equitable remedies.  This Court has previously stated that "the unclean hands doctrine traditionally only applies to equitable remedies and does not bar a plaintiff from recovering damages."  *Nature's Prod., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1317 (S.D. Fla. 2013) (citations omitted).  The Defendants' defenses are also legally insufficient as a matter of law on the merits.  The doctrine of unclean hand requires a defendant to demonstrate that: i) "the plaintiff's wrongdoing is directly related to the claim against which it is asserted[,]" and ii) "even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct." *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993).  "The maxim of unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 148, 78 L.Ed. 293, 297 (1933)).

None of the alleged facts, and no evidence, demonstrates that TTT Foods engaged in any wrongdoing that is directly related to the claims at issue between TTT Foods and Mrs. Namm. Nor do any of the alleged facts, or evidence show that Mrs. Namm was personally injured by TTT Foods' alleged conduct.  The allegations relating to TTT Foods' involvement with the Judgment Debtor prior to the Settlement are not directly related to the claims at issue between TTT Foods and Mrs. Namm.  The claims at issue relate to the Transfers, the improper shifting of the Judgment Debtor's revenue to Deluxe, and the improper winding down of the Judgment Debtor, all of which occurred after Mrs. Namm became the sole owner of the Judgment Debtor. Moreover, it is undisputed that Mrs. Namm and the Judgment Debtor executed mutual releases that terminated any claims they had against TTT Foods that arose prior to March 27, 2015.  See Par. 6, Plaintiff's Statement.  *See Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1520 (S.D. Fla.

1995) ("It is hornbook law that the execution of a valid release results in the termination of all rights covered by the agreement.").

The allegations relating to Mrs. Namm not signing a guaranty does not constitute any wrongdoing on the part of TTT Foods. The remaining allegations relate to the debtor and creditor relationship between the Judgment Debtor and TTT Foods under the Settlement and Notes, and do not directly relate to TTT Foods' claims against Mrs. Namm set forth in the Complaint. Moreover, the disputes between the Judgment Debtor and TTT Foods with respect to the Notes, and TTT Foods' collection efforts, were resolved through the State Court Action and entry of the Judgments. See Par. 14-17, Plaintiff's Statement.

Lastly, TTT Foods is not seeking to recover attorney's fees against the Defendants, and thus the sixteenth affirmative defense is not applicable.

**WHEREFORE**, TTT Foods respectfully requests the entry of an order:

i.      granting the Motion;

ii.     entering judgment in favor of TTT Foods on Count I against Mrs. Namm and Jonathan Namm, jointly and severally, in the amount of the Transfers, which total $221,260;

iii.    entering judgment in favor of TTT Foods on Count II against Mrs. Namm and Jonathan Namm, jointly and severally, in the amount of the Transfers, which total $221,260;

iv.     entering judgment in favor of TTT Foods on Count III against Mrs. Namm and Jonathan Namm, jointly and severally, in the amount of the Transfers, which total $221,260;

v.      entering judgment in favor of TTT Foods on Count V against Mrs. Namm for breach of fiduciary duties, and awarding TTT Foods damages in the amount of the Transfers plus the JMT Transfers, which total $243,248.08;

vi.     entering judgment in favor of TTT Foods on Count VI against Deluxe in the amount of the Indebtedness[5] ,$233,593.59 as of April 17, 2017, owed by the Judgment Debtor to TTT Foods under a theory of successor liability;

vii.    entering judgment in favor of TTT Foods on Count VII against Mrs. Namm in the

---

[5] The Indebtedness includes the following: $176,001.76 judgment entered on April 18, 2016 plus post-judgment interest in the amount of $8,337.18 (364 days at $22.90/diem) and the $47,178.68 judgment entered on May 16, 2016 plus post-judgment interest in the amount of $2,075.97 (336 days at $6.17/diem). Therefore, the Indebtedness totals $233,593.59 as of April 17, 2017.

amount of the Indebtedness[6], $233,593.59 as of April 17, 2017, owed by the Judgment Debtor to TTT Foods as an alter ego of the Judgment Debtor and under the theory of piercing the corporate veil; and

viii.   granting such further relief as the Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF Notice of Electronic Filing on Gus R. Benitez, Esquire, counsel for the Defendants, 1223 East Concord Street, Orlando, Florida 32803 service@arbenitez.com; Gus@arbenitez.com, on April 17, 2017.

Respectfully submitted,

SHRAIBERG LANDAU & PAGE, P.A.
Attorneys for TTT Foods Holdings Company LLC
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Email: jpage@slp.law
Email: blee@slp.law

By: */s/ John E. Page*
        John E. Page
        Florida Bar No. 0860581
        Bernice C. Lee
        Florida Bar No. 0073535

---

[6] See discussion of Indebtedness in footnote 5 above.