UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

TTT Foods Holding Company LLC,
a Florida limited liability company,
         Plaintiff,

v.                                 Case No.: 9:16-cv-81798-DMM

BEATRICE NAMM, an individual,
JONATHAN NAMM, an individual,
and DELUXE GOURMET
SPECIALTIES LLC, a New Jersey
         Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

    COME NOW the Defendants BEATRICE NAMM ("Mrs. Namm"), JONATHAN

NAMM ("Mr. Namm") and DELUXE GOURMET SPECIALTIES LLC, a New Jersey limited

liability company ("Deluxe"), by and through the undersigned attorneys, and file this their

*Response to Plaintiff's Motion for Summary Judgment*, and state in support thereof as follows:

I.  **REPLY TO INTRODUCTION**:

    There is no record support for a summary judgment as to any of Plaintiff TTT FOODS

HOLDING COMPANY LLC's, a Florida limited liability company ("Plaintiff"), claims. What

the record supports is that the Plaintiff, based on a review of some bank accounts, is making

unfounded allegations that are not only not supported by the record, but are untrue. Specifically,

Plaintiff alleges that $118,000.00 was "transferred to or for the benefit of the Namms" by

Deluxe, and "that the Judgment Debtor transferred over an additional $100,000 to or for the

benefit of the Namms", "for the payment of various personal expenses". Plaintiff then goes on to

allege that JMT is "conducting a similar business" as the Judgment Debtor and that JMT "has been funded by revenue received from the Judgment Debtor's product". The foregoing allegations are not only not supported by the record, and disputed by Defendants, but they are untrue. In fact, Mrs. Namm, who had an annual compensation package approved by the Plaintiff of over $150,000.00, only was paid $16,210.81 from March 2015 to the present date. *See Mrs. Namm's Amended Affidavit at ¶82.* As to the reference regarding JMT, the record is undisputed that JMT is a separate and distinct business, selling a totally different product, and any statement such as that JMT is "conducting a similar business" as the Judgment Debtor is misleading, at best. *See Mrs. Namm's Amended Affidavit at* ¶82.

II.   **FACTS**:

Mrs. Namm developed some unique formulae and recipes for spaghetti and barbecue sauces, and salsas ("Recipes"). *See Mrs. Namm's Amended Affidavit at* ¶2. Starting in 2006, without any prior business experience, she started to produce and sell spaghetti and barbecue sauces, and salsas, out of her home in New Jersey. *See Mrs. Namm's Amended Affidavit at* ¶3. She eventually organized Defendant DELUXE GOURMET SPECIALTIES LLC, a New Jersey limited liability company ("Deluxe"), and started doing the sauces and salsa business through Deluxe. *See Mrs. Namm's Amended Affidavit at* ¶4. She was the sole manager and member of Deluxe. *See Mrs. Namm's Amended Affidavit at* ¶5. The Recipes were assets of Deluxe until they were transferred to the Judgment Debtor pursuant to the Asset Purchase Agreement on or about December of 2012. *See Mrs. Namm's Amended Affidavit at* ¶6. The Recipes were very successful and have significant value. *See Mrs. Namm's Amended Affidavit at* ¶7.

In 2012, when the Recipes were transferred to the Judgment Debtor, Bea's Brooklyn's Best, LLC, a Florida limited liability company ("Judgment Debtor"), paid her the sum $300,000.00 for 49% of the assets of Deluxe, the biggest asset of Deluxe being the Recipes. *See Mrs. Namm's Amended Affidavit at* ¶8. When Plaintiff sold its 49% ownership interest back to the Judgment Debtor in March of 2015, the Judgment Debtor agreed to pay Plaintiff the sum of $320,000.01, recognizing the significant value of the assets of Judgment Debtor; the most valuable of the assets being the Recipes. *See Mrs. Namm's Amended Affidavit at* ¶9. The Recipes have value today. *See Mrs. Namm's Amended Affidavit at* ¶10. The Recipes have had value at all times since March 15, 2015. *See Mrs. Namm's Amended Affidavit at* ¶11. The Recipes are assets of the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶12.

Mrs. Namm believe the Recipes have significant value today, which Plaintiff's expert hjas not considered. *See Mrs. Namm's Amended Affidavit at* ¶13. Mrs. Namm believes that the value of the Recipes, at all times since March 2015, was well over the debt owed to Plaintiff. *See Mrs. Namm's Amended Affidavit at* ¶14. The Recipes are still available to Plaintiff and have value which exceeds the remaining debts of the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶15. Neither Mrs. Namm nor the Judgment Debtor have transferred to anyone any of the Recipes. *See Mrs. Namm's Amended Affidavit at* ¶16.

Mrs. Name stated there is no question that the Judgment Debtor is not now, nor as it ever been, insolvent. *See Mrs. Namm's Amended Affidavit at* ¶17. The Judgment Debtor was not insolvent on March 2015, nor at any other time when any of the transfers that form the subject matter of this lawsuit were made, nor is it insolvent today. *See Mrs. Namm's Amended Affidavit*

*at* ¶18. The assets of Judgment Debtor exceed the amount of all the debts of Judgment Debtor, and that fact was true on March of 2015, it was true from March 2015 to June of 2016, and is still true today. *See Mrs. Namm's Amended Affidavit at* ¶19. Mrs. Namm disagrees with William G. King's report and conclusion that the Judgment Debtor was insolvent at any time when any of the transfers that Plaintiff is alluding to in its undisputed facts statement submitted to the Court. *See Mrs. Namm's Amended Affidavit at* ¶20.

JMT Food Group LLC, a Florida limited liability company ("JMT"), as nothing to do with Deluxe or the Judgment Creditor. *See Mrs. Namm's Amended Affidavit at* ¶21. On January 15, 2015, Mrs. Namm organized JMT to manufacture and distribute humus, a totally distinct product from the Recipes and the barbecue sauces and pastas and salsas that Judgment Debtor sold, and totally unrelated to the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶22. Generally speaking, hummus is a Levantine dIP or spread made from cooked, mashed chickpeas or other beans, blended with tahiti, olive oil, lemon juice, salt and garlic. *See Mrs. Namm's Amended Affidavit at* ¶23. Hummus is not a spaghetti or barbecue sauce or a salsa. *See Mrs. Namm's Amended Affidavit at* ¶24. JMT has never been in the business of manufacturing or distributing spaghetti or barbecue sauces, or salsa. *See Mrs. Namm's Amended Affidavit at* ¶25. Neither Deluxe nor Judgment Debtor were ever in the business of manufacturing or distributing hummus. *See Mrs. Namm's Amended Affidavit at* ¶26.

Plaintiff was organized on December 11, 2012, by Donald K. Porges. *See Mrs. Namm's Amended Affidavit at* ¶27. Donald K. Porges was designated as the sole manager of Plaintiff, and as consistently been the sole manager of Plaintiff. *See Mrs. Namm's Amended Affidavit at* ¶28.

Donald K. Porges is, and was at all times material hereto, a practicing certified public accountant with his own CPA firm. *See Mrs. Namm's Amended Affidavit at* ¶29. Donald K. Porges organized Bea's Brooklyn's Best LLC, a Florida limited liability company ("Judgment Debtor"), on December 11, 2012. *See Mrs. Namm's Amended Affidavit at* ¶30.

Unbeknownst to Mrs. Namm at that time, Donald K. Porges designated himself as the sole manager of Judgment Debtor with the Florida Division of Corporations, and has consistently held himself as the sole manager of Plaintiff until March 20, 2015, at which time Mrs. Namm was then designated the sole manager. *See Mrs. Namm's Amended Affidavit at* ¶31. Donald K. Porges was not supposed to be the sole manager. *See Mrs. Namm's Amended Affidavit at* ¶32. According to the Operating Agreement, there were supposed to be three (3) managers. Specifically, Judgment Debtor's Operating Agreement provided that it would be under the control of the three named managers (i.e., Mrs. Namm, Eric Scholer and Donald K. Porges), with each manager having certain specific designated areas of authority. *See Mrs. Namm's Amended Affidavit at* ¶33.

Mrs. Namm's authority was limited, according to the Operating Agreement, to "[m]arketing, securing new accounts, research and development and quality control". *See Mrs. Namm's Amended Affidavit at* ¶34. Eric Scholer's scope of authority, according to the Operating Agreement, was "[m]anaging the road show business, general administration (including financial, accounting, insurance and legal functions), marketing, negotiations and logistics". *See Mrs. Namm's Amended Affidavit at* ¶35. Donald K. Porges' scope of authority, according to the Operating Agreement, was "[f]inancial, accounting and insurance matters". Obviously, Mr.

Porges, by designating himself the sole manager, had a lot more control than what was designated in the Operating Agreement. *See Mrs. Namm's Amended Affidavit at* ¶36.

Plaintiff was in complete control of the finances, book keeping and records of the Judgment Debtor, including, but not limited to, he was responsible for keeping all financial records, invoicing customers, collecting accounts receivables, paying accounts payables, paying payroll (specifically, her compensation package), and accounting for all income and expenses, and was well aware at all times prior to and at least until March 27, 2015, of the financial status of the Judgment Debtor and how the Judgment Creditor was doing business, as well as the Judgment Debtor's relationship with Deluxe. *See Mrs. Namm's Amended Affidavit at* ¶37. Plaintiff knew better than anyone else the Judgment Debtor's ability to incur and service the obligations created by the promissory notes that form the debts that are the subject matter of this action ("Notes"). *See Mrs. Namm's Amended Affidavit at* ¶38. Plaintiff knew the Judgment Debtor's financial condition at the time they decided to accept the Notes and they accepted the fact that its remedy for non-payment would be limited to collecting the debt from the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶39. For Plaintiff to claim that Mrs. Namm concealed any information, or somehow perpetrated a fraud upon Plaintiff, by having the Judgment Creditor undertake the debt is untenable. *See Mrs. Namm's Amended Affidavit at* ¶40.

Mrs. Namm did not conceal, or attempt to conceal, any of the transfers that form the subject matter of this lawsuit, or that are alleged to be fraudulent by Plaintiff, nor did Mrs. Namm intend to hinder, injure or defraud anyone by doing business by and through the Judgment Debtor. In fact, it is quite obvious from the checks written and the other bank records, as well as

the fact that the Judgment Debtor disclosed all the books and records to Plaintiff during the State Court proceedings, that there was no attempt by Mrs. Namm or anyone else on her behalf to conceal the nature of the transfers or the manner in which Mrs. Namm was operating the Judgment Debtor after March of 2015. *See Mrs. Namm's Amended Affidavit at* ¶41. Had Mrs. Namm tried to defraud someone, Mrs. Namm would certainly have not made checks payable to her husband's mortgage company, for example, but instead Mrs. Namm would have concealed the nature of the transfer, which Mrs. Namm never did. *See Mrs. Namm's Amended Affidavit at* ¶42.

All the monies Mrs. Namm received from the Judgment Creditor were either repayment to her of monies Mrs. Namm loaned to the Judgement Debtor or monies Mrs. Namm earned for her services to the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶43. The Judgment Debtor was her life and Mrs. Namm devoted her full time to it until Mrs. Namm realized it was futile to try to keep it in business because of Plaintiff's conduct. *See Mrs. Namm's Amended Affidavit at* ¶44. If anything had to be done to operate or manage the Judgment Debtor, it was up to Mrs Namm to get it done. *See Mrs. Namm's Amended Affidavit at* ¶45. Mrs. Namm believed at the time, and still believes now, that Mrs. Namm was entitled to the monies Mrs. Namm received from the Judgment Debtor as compensation for her services to the Judgment Debtor and Mrs. Namm believes that the compensation was more than fair to the Judgment Debtor and far less than what Plaintiff and the Judgment Debtor agreed to pay her; in fact, her compensation had been established by Plaintiff in 2012 at a minimum of a salary of $75,000.00 plus $75,000.00 in advanced distribution, and but for her services to the Judgment Debtor, it would not be able to do

any business and would have ceased to operate in June of 2015. *See Mrs. Namm's Amended Affidavit at* ¶46. While Plaintiff had control of the Judgment Debtor, Mrs. Namm was employed to promote and develop the products and would travel around the country holding shows and her compensation, approved by Plaintiff, was a salary of $75,000.00 a year, an additional advance on future distributions in the amount of $75,000.00 a year, and reimbursement for meals, gas, travel expenses and other miscellaneous items, for an annual compensation package of over $150,000.00. *See Mrs. Namm's Amended Affidavit at* ¶47. Her compensation agreement with the Judgment Debtor after March 2015 did not change, except for the fact that the Judgment Debtor did not pay her because Plaintiff's conduct caused a significant loss of business. *See Mrs. Namm's Amended Affidavit at* ¶47. From March 2015 to June of 2016, Mrs. Namm was responsible to do everything that Mrs. Namm was doing before March of 2015 and, in addition thereto, she was also responsible for all the work Plaintiff was doing prior to March of 2015, which work Mrs. Namm needed to do or supervise after March of 2015. *See Mrs. Namm's Amended Affidavit at* ¶48. Mrs. Namm tried to bring current the payment amounts that Plaintiff alleged were owed on June of 2015, but Plaintiff would not let her pay the amounts owed. *See Mrs. Namm's Amended Affidavit at* ¶49.

The reasons that the Judgment Debtor went out of business was because Plaintiff forced it out of business by interfering intentionally with the business relationship with its customers, refused to allow it to make the monthly payments under the Notes, garnished its bank account after obtaining a final judgment, and made it impossible for it to continue to do business. *See Mrs. Namm's Amended Affidavit at* ¶50. Mrs. Namm tried keeping the Judgment Debtor

operating after June of 2015 only because she thought that things would work out and Plaintiff would realize the mutual benefit to accepting payments under the promissory notes, as opposed to wanting to destroy the business; Mrs. Namm was wrong. *See Mrs. Namm's Amended Affidavit at* ¶51. Mrs. Namm has never concealed any assets of the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶52. Mrs. Namm has never concealed any transfers from the Judgment Debtor, nor did Mrs. Namm ever conceal any monies she was paid by the Judgment Creditor. *See Mrs. Namm's Amended Affidavit at* ¶53. The Judgment Creditor employed and paid Mrs. Namm, and/or was obligated to pay Mrs. Namm, $150,000.00 a year ($75,000.00 as earned salary and $75,000.00 as an advancement on future distributions), and that was agreed to by Plaintiff; an amount that Plaintiff believed to be reasonable and fair by Plaintiff for the work Mrs. Namm was doing during that time frame (i.e., 2012 to March 2015) promoting the barbecue sauce, which was less responsibilities than Mrs. Namm was given after March 2015. *See Mrs. Namm's Amended Affidavit at* ¶54. During 2015 and 2016, the Judgment Debtor was still obligated to pay her the $150,000.00. *See Mrs. Namm's Amended Affidavit at* ¶55. However, Mrs. Namm was not paid that amount. *See Mrs. Namm's Amended Affidavit at* ¶55.

In January 2, 2015, Ms. Namm sued two of the principles of Plaintiff (i.e., Jeffrey Brandon and Eric Scholer) for violating the Asset Purchase Agreement dated December 11, 2012. *See Mrs. Namm's Amended Affidavit at* ¶56. On or about March 27, 2015, as part of the settlement negotiations of the aforementioned lawsuit, Plaintiff relinquished control and ownership of Judgment Debtor to Mrs. Namm in exchange for certain promissory notes to be paid exclusively by Brooklyn's Best LLC. *See Mrs. Namm's Amended Affidavit at* ¶57. At that

point, Mrs. Namm's duties and responsibilities increased to include all responsibilities previously undertaken by Plaintiff. *See Mrs. Namm's Amended Affidavit at* ¶58. There was no longer any division of labor and everything rested on Mrs. Namm's shoulders. *See Mrs. Namm's Amended Affidavit at* ¶59.

Plaintiff, at all times material thereto, was represented by a group of attorneys who drafted the promissory note, which group of attorneys included John Page and Bernice Lee, the two (2) attorneys representing Plaintiff in this case. *See Mrs. Namm's Amended Affidavit at* ¶60. Mrs. Namm did not sign or otherwise guarantee repayment of the promissory notes. *See Mrs. Namm's Amended Affidavit at* ¶61. Plaintiff, knowing full well the financial condition of the Judgment Debtor, and knowing Mrs. Namm very well and knowing the compensation Mrs. Namm was paid by the Judgment Debtor, agreed to accept the risks and consequences of the Judgment Debtor not repaying the said notes, knowing that Mrs. Namm would be getting paid at least $75,000.00 in salary, if not the entire $150,000.00 compensation package Plaintiff had agreed to and the Judgment Debtor had undertaken. *See Mrs. Namm's Amended Affidavit at* ¶62

On June 3, 2015, Plaintiff declared Judgment Debtor in default and refused any further payments under the notes. *See Mrs. Namm's Amended Affidavit at* ¶63. Prior to June 3, 2015, Mrs. Namm attempted to pay all amounts due under the notes, but Plaintiff refused to accept payment. *See Mrs. Namm's Amended Affidavit at* ¶64. Mrs. Namm later learned that Plaintiff's attorney, John Page, had already began contacting her customers, as of June 1, 2015. *See Mrs. Namm's Amended Affidavit at* ¶65. That was done by Plaintiff's attorney, John Page, sending the Judgment Debtor's customers on June 1, 2015, the letter and enclosures attached as Exhibit "A"

to the Judgment Debtor's responsive pleading in the State Case filed by Plaintiff; a copy of the Judgment Debtor's responsive pleading in the State Case is attached hereto and incorporated herein as Exhibit "A". *See Mrs. Namm's Amended Affidavit at* ¶66. The letter was on Mr. Page's letterhead and starts by stating that Mr. Page represents Plaintiff "regarding its claim against Judgment Debtor (underline added)." *See Mrs. Namm's Amended Affidavit at* ¶67. The customers were being told by Mr. Page that there was a "claim" against the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶68.  In other words, the Judgment Debtor was delinquent in its obligations to Plaintiff or, put another way, the Judgment Debtor was not paying its bills. *See Mrs. Namm's Amended Affidavit at* ¶69. The letter then goes on to state that the customer has "an account owing to Judgment Debtor's Best, LLC". *See Mrs. Namm's Amended Affidavit at* ¶70. The customer is now being told that the customer owes monies to Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶71. That statement is being made without Plaintiff knowing if the customer actually owed anything to the Judgment Debtor at that particular time, and was insulting to the customer because it infers that the customer is delinquent and owes Judgment Debtor monies that it has not timely paid. *See Mrs. Namm's Amended Affidavit at* ¶72. Mr. Page then provided the customer with a copy of the promissory notes. *See Mrs. Namm's Amended Affidavit at* ¶73. Mr. Page then stated to the customer that Judgment Debtor "is now in default" under the "promissory notes and security agreements" and tells the customer that payment "is to be made to" Mr. Page. *See Mrs. Namm's Amended Affidavit at* ¶74. Mr. Page also attached his wiring instructions. *See Mrs. Namm's Amended Affidavit at* ¶75.

The Judgment Debtor's customers were shocked at having received the letters and

enclosures, and their reaction was mixed. *See Mrs. Namm's Amended Affidavit at* ¶76. Costco, for example, stop doing business with the Judgment Creditor as a direct result of Mr. Page's letter and enclosures. *See Mrs. Namm's Amended Affidavit at* ¶77. The Judgment Debtor was willing and able to bring the payments current, but Mr. Page refused to allow it to pay the delinquent amount, instead insisting that attorney fees in the amount of $12,585.00 had already accrued as of June 11, 2015 and would need to be paid (for just a few days of work in drafting and sending the letter of June 1, 2015); the email string is attached hereto as Exhibit "B". *See Mrs. Namm's Amended Affidavit at* ¶78.

As to Plaintiff's Statement of Undisputed Facts ¶ 44, Plaintiff's Exhibit 25 purports to state that Mrs. Namm took $120,075.32 from Judgment Debtor; that is not true. From the $120,075.32 on Plaintiff's Exhibit 25, the amount of $75,347.19 consisted of business expenses of the Judgment Debtor, leaving $44,728.13 which was provided to Mrs. Namm to reimburse her for the loans to the Judgment Debtor and as part of her compensation. Mrs. Namm composed a list which states the purpose for each withdrawal, which is attached hereto as Exhibit "C". *See Mrs. Namm's Amended Affidavit at* ¶79.

As to Plaintiff's Statement of Undisputed Facts ¶ 45, Plaintiff's Exhibit 26 purports to state that Mrs. Namm took $119,105.88 from Deluxe; that is not true. From the $119,105.88 Plaintiff's Exhibit 26, the amount of $68,933.53 consisted of business expenses of the Judgment Debtor, leaving $50,172.35 which was provided to Mrs. Namm to reimburse her for her loans to the Judgment Debtor and as part payment of her salary and compensation. Mrs. Namm composed a list which states the purpose for each withdrawal, which is attached hereto as Exhibit "D". *See*

*Mrs. Namm's Amended Affidavit at* ¶80.

Mrs. Namm loaned the Judgment Debtor a total of $78,689.67. Mrs. Namm has attached hereto and incorporated herein the chart reflecting the loans Mrs. Namm made to Judgment Debtor as Exhibit "E". *See Mrs. Namm's Amended Affidavit at* ¶81.

When you add the $44,728.13 net amount from Plaintiff's Exhibit 25 and the $50,172.35 net amount from Plaintiff's Exhibit 26 and subtract from that the $78,689.67 loaned amount, her paid salary was $16,210.81 for all her services to the Judgment Debtor from March 2015 to the present day. *See Mrs. Namm's Amended Affidavit at* ¶81.

The amounts in Plaintiff's Exhibits 25 and 26, minus the ordinary operating expenses reflected in Defendants Exhibits "B" and "C", were compensation for Mrs. Namm's services to the Judgment Debtor. Therefore, her compensation was $16,210.81 for all the work Mrs. Namm did for Judgment Debtor from March 2015 until the present date. *See Mrs. Namm's Amended Affidavit at* ¶82.

All the monetary compensation Mrs. Namm received (i.e., $16,210.81) for working for the Judgment Debtor after March of 2015 directly benefitted the Judgment Debtor and was less than what is reasonable to pay for her services to the Judgment Debtor. Also, but for Mrs. Namm's work for the Judgment Debtor after March 2015, the Judgment Debtor would have gone out of business in June 2015, instead of June of 2016 (when Plaintiff made it impossible for the Judgment Debtor to continue doing business). *See Mrs. Namm's Amended Affidavit at* ¶83.

As to Plaintiff's Statement of Undisputed Facts ¶41 and ¶42, the $11,365.00 and $3,718.89 belonged to JMT, not Deluxe or the Judgment Debtor; JMT's customer mistakenly

sent the check to Deluxe. Shoprite and some other accounts were purchasing hummus from JMT. Those same customers and accounting department never made the changes to JMT and did mail checks that said Deluxe Gourmet Specialties in error. Their accounts payable department should have made the checks payable to JMT. Once those checks cleared they were transferred to JMT. Plaintiff has all the records that would verify the foregoing facts, for they have subpoena all records of the customers. *See Mrs. Namm's Amended Affidavit at  ¶84.*

As to Plaintiff's Statement of Undisputed Facts ¶9: Plaintiff was repeatedly instructed by Mrs. Namm to contact the customers and advise them that the Judgment Debtor is the company doing business, not Deluxe, and to instruct the customers to forward payment to the Judgment Creditor not Deluxe. Plaintiff refused to do so. Instead, Plaintiff continued to accept checks and deposits made payable to Deluxe, endorsing many of the checks as "Twin Tower Trading Inc" and/or "Bea's Brooklyn's Best LLC", and depositing them in Bea's Brooklyn's bank account. Mrs. Namm has attached copies of those canceled checks, as Exhibit "F". Plaintiff controlled and made the deposits of all checks owed to Bea's Brooklyn, whether or not the check was made payable to Deluxe or the Judgment Creditor up to March 27, 2015. *See Mrs. Namm's Amended Affidavit at  ¶85.*

As to Plaintiff's Statement of Undisputed Facts ¶10: The transcript speaks for itself and does not support that statement. As to the second sentence, Mrs. Namm did testify to that affect but Mrs. Namm was mistaken. The reason why those checks were deposited in Deluxe was because the checks were made payable to Deluxe. *See Mrs. Namm's Amended Affidavit at  ¶86.*

As to Plaintiff's Statement of Undisputed Facts ¶11, records for account ending in 6618

speak for themselves. Furthermore, it was common practice of the Judgment Debtor, since 2012, to receive checks made payable to Deluxe. Plaintiff had the ability to deposit in the Judgment Debtor's account checks made payable to Deluxe, but Mrs. Namm did not have the banking connections that allowed her to do so, so Mrs. Namm had to deposit the Deluxe checks in the Deluxe bank account. *See Mrs. Namm's Amended Affidavit at* ¶87.

As to Plaintiff's Statement of Undisputed Facts ¶12, Mrs. Namm made the statement but she was mistaken. *See Mrs. Namm's Amended Affidavit at* ¶88.

As to Plaintiff's Statement of Undisputed Facts ¶13, that is untrue; the Notes were not in default on April 27, 2015, as is self evident from the Notes themselves, as well as the letter referred to by Plaintiff. Mrs. Namm's position was and is that the Judgment Debtor was not in default on April 27, 2015. *See Mrs. Namm's Amended Affidavit at* ¶89.

Defendants admit Plaintiff's Statement of Undisputed Facts ¶14, except that Defendants' position was in the State Court that there was no default under the Notes. *See Mrs. Namm's Amended Affidavit at* ¶90.

As to Plaintiff's Statement of Undisputed Facts ¶28, the statement is not true. While Deluxe and JMT operated out of the indicated address, prior to March of 2015 the Judgment Debtor operated out of Florida.

As to Plaintiff's Statement of Undisputed Facts ¶23, any transaction after Mrs. Namm's resignation would have been part of the winding down of the business and the last check cleared on June 26, 2016, for an invoice mailed on May 15, 2016. *See Mrs. Namm's Amended Affidavit at* ¶92.

As to Plaintiff's Statement of Undisputed Facts ¶29, ¶31 and ¶32, Deluxe was not in business after 2012 and as such, had no customers and did not sell anything after 2012. Deluxe has not sold anything since 2012; all the selling has been done by the Judgment Creditor, even if checks were sent to the Judgment Creditor in the name of Deluxe. Plaintiff was repeatedly instructed by Mrs. Namm to contact the Judgment Debtor's customers and advise them that the Judgment Creditor is the company doing business and to instruct them to forward payment to the Judgment Creditor, instead of Deluxe. The fact that customers made their check payable to Deluxe did not change that fact. It is misleading and false to state that Deluxe and the Judgment Creditor sell the same products. All the selling has been done by the Judgment Creditor after 2012, even if checks were sent to the Judgment Creditor in the name of Deluxe. *See Mrs. Namm's Amended Affidavit at ¶93.*

Plaintiff's Statement of Undisputed Facts ¶33 and ¶34 are untrue. Deluxe is not the same company as the Judgment Debtor, and "Deluxe Gourmet" or "Deluxe Gourmet Specialties" are not separate companies, but both are a reference to Deluxe. The amounts shown on Exhibit 19 are payments belonging to JMT that were made payable to "Deluxe Gourmet" or "Deluxe Gourmet Specialties" by mistake and were properly deposited or transferred to the JMT's bank account. *See Mrs. Namm's Amended Affidavit at ¶94.*

As to Plaintiff's Statement of Undisputed Facts ¶35: When Mrs. Namm saw that Kaltec's (one of the manufacturers for the Judgment Debtor) invoice due dates were approaching, Mrs. Namm would withdraw funds from the Judgment Creditor's account and deposit them into Deluxe account ending in 6618 to combine Deluxe and the Judgment Creditor's monies together

to complete the amount of monies owed. Since Kaltec was a TD bank customer (and to save her wiring fees) Mrs. Namm would sometimes deposit the cash into the Deluxe bank account then ask for a deposit slip and deposit funds right into the Kaltec's TD Bank account ending 5492 and then confirm with Lisa, a person in their accounting department, that the funds went through. Mrs. Namm would note that Plaintiff subpoeanaed all Kaltec invoices so all this information is in Plaintif's possession. *See Mrs. Namm's Amended Affidavit at* ¶95.

As to Plaintiff's Statement of Undisputed Facts ¶36: Mrs. Namm understood the interrogatory to be asking about transfer of personal property and that is the way Mrs. Namm answered that interrogatory. You will note that the very next interrogatory requested information on "money" and at that time the Judgment Debtor had provided all its books and records, his accountant's deposition had been taken and Plaintiff had in its possession all the books and records of Plaintiff. *See Mrs. Namm's Amended Affidavit at* ¶96.

As to Plaintiff's Statement of Undisputed Facts ¶ 40, that statement is untrue. Deluxe did not transfer the $118,737.56 to or for the benefit of Mrs. Namm's husband nor her. *See Mrs. Namm's Amended Affidavit at* ¶97.

Defendants do not dispute the statement in Plaintiff's Statement of Undisputed Facts ¶44, but JMT had nothing to do with the Judgment Debtor and is a separate and distinct company with separate and distinct products. *See Mrs. Namm's Amended Affidavit at* ¶98.

As to Plaintiff's Statement of Undisputed Facts ¶ 47, Mrs. Namm disputes this statement in that Mr. Namm assisted her from time to time in her work for the Judgment Debtor. *See Mrs. Namm's Amended Affidavit at* ¶99.

As to Plaintiff's Statement of Undisputed Facts ¶ 49, Mrs. Namm denies that statement in that Mrs. Namm gave other explanations as to the transfer, whatever transfers are being referred to by Plaintiff. If the statement is meant to refer only as to what Mrs. Namm said or did not say during her deposition, the transcript speaks for itself. *See Mrs. Namm's Amended Affidavit at* ¶100.

As to Plaintiff's Statement of Undisputed Facts ¶ 50, Mrs. Namm denies that statement in that there is evidence that some of the transfers, whatever transfers are being referred to by Plaintiff at the time, were for her salary. If the statement is meant to refer only as to wha tMrs. Namm said or did not say during her deposition, the transcript speaks for itself. *See Mrs. Namm's Amended Affidavit at* ¶101.

As to Plaintiff's Statement of Undisputed Facts ¶ 51, Mrs. Namm denies this statement. There were in fact payments regularly made by the Judgment Debtor to Mrs. Namm for her salary and compensation, in unequal amounts. *See Mrs. Namm's Amended Affidavit at* ¶102.

As to Plaintiff's Statement of Undisputed Facts ¶ 52, Mrs. Namm is not an accountant and the tax returns depicted speak for themselves. *See Mrs. Namm's Amended Affidavit at* ¶103.

As to Plaintiff's Statement of Undisputed Facts ¶ 53, Mrs. Namm's deposition transcript speaks for itself. She is not an accountant and she had an accountant do her tax returns. *See Mrs. Namm's Amended Affidavit at* ¶104.

Mrs Namm denies Plaintiff's Statement of Undisputed Facts ¶ 57 and 58. Judgment Debtor was not insolvent during the period of March 27, 2015 through June 30, 2016. Mr. King's report says what it says, but Mrs. Namm disagrees with Mr. King's conclusions and opinions

because the assets of Judgment Debtor exceeds its liabilities and but for Plaintiff's intentional

interference with the Judgment Debtor's customers and Mr. King noting the entire debt due on

the Notes each month, the Judgment Debtor was making money. Mrs. Namm disagrees with Mr.

King's report and findings and disputes the facts, assumptions and method by which it was

determined that in his opinion the Judgment Debtor was insolvent, and Mrs. Namm notes that no

affidavit was provided by Mr. King. *See Mrs. Namm's Amended Affidavit at* ¶105.

As to Plaintiff's Statement of Undisputed Facts ¶ 61, the statement is misleading. Kaltec

payments were always behind because payment on their invoice was due 30 days after invoicing.

*See Mrs. Namm's Amended Affidavit at* ¶106.

III.   **RESPONSE TO THE SUMMARY JUDGMENT STANDARD**:

The law recited by Plaintiff's counsel is correct. However, on a motion for summary

judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the

light most favorable to the non-moving party and determine whether the evidence could

reasonably sustain a jury verdict for the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Miles v. Jones*, 2010 U.S. Dist. LEXIS 139617, *12-13

(S.D. Fla. Nov. 22, 2010).

IV.   **RESPONSE AS TO COUNT I**:

In order to prevail under Count I (§726.105(1)(a), *Florida Statutes*), Plaintiff must show

"actual intent to hinder, delay or defraud". Fraudulent intent often cannot be resolved on a

motion for summary judgment because there is a factual question involving the parties' states of

mind, actual fraudulent intent. "Ordinarily, the issue of fraud is not a proper subject of a

summary judgment. Fraud is a subtle thing, requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute a fraud." *Rosen v. Zoberg*, 680 So. 2d 1050, 1052 (Fla. 3d DCA 1996 ) (quoting *Auto. Sales, Inc. v. Federated Mut. Implement & Hardware Ins. Co.*, 256 So. 2d 386, 386 (Fla. 3d DCA 1972 )).

There is no record support establishing undisputed evidence of an intent to hinder, delay or defraud by either Mr. or Mrs. Namm. In fact, the record contains compelling evidence that there was no intent to defraud, but instead, at worst, there was some bad record keeping by the Judgment Debtor. *See, Mrs. Namm's entire Amended Affidavit.*

Plaintiff refers to the factors listed in §726.105(2), *Florida Statutes*, that a court may consider to determine "intent". Those are exactly what the statutes states they are, factors to consider. Their presence do not dictate a finding of an intent to defraud. In this case, in particular, the *technical or apparent* presence of some evidence of one or a number of the factors does not compel a finding of fraud which can sustain a summary judgment.

V.      **RESPONSE AS TO COUNT II**:

As to Count II (§726.105(1)(b), *Florida Statutes*), in order to prevail Plaintiff must establish undisputed evidence establishing that the Judgment Debtor, without receiving equivalent value, "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." As previously stated, the Judgment Creditor received equivalent value for all transfers and was not insolvent. The assets of

the Judgment Debtor, even today, are sufficient to satisfy Plaintiff's debt, and when the debt was

initially incurred not only did the Judgment Debtor believe it had the ability to to pay the debt as

it became due, but Plaintiff, *an insider of the Judgment Debtor at the time of the incurring of the*

*debt*, believed that the Judgment Debtor had the ability to pay the debt or it would not have

agreed to the Notes. There is no record support for the entry of summary judgment as to Count II.

VI.     **RESPONSE AS TO COUNT III**:

As to Count II (§726.106(1), *Florida Statutes*), for all the same reasons articulated as to

Count I and II, supra, there is no record support for the entry of summary judgment as to Count

III, Plaintiff having failed to meet its burden of proof.

VII.    **RESPONSE AS TO COUNT V (Fiduciary Duty)**:

The undersigned was unable to find any Florida law that would support the notion that

Mrs. Namm owed Plaintiff a fiduciary duty. Furthermore, based on the law presented by Plaintiff

in its motion, one of the requirements for that fiduciary duty that Plaintiff alleges is that the

Judgment Debtor be insolvent, and that is an issue of fact to be determined by the trier of fact and

a fact that is disputed. Mrs. Namm has clearly articulated that the Judgment Debtor has not been

and is not now insolvent. Furthermore, the trier of fact will need to determine if there is any

fiduciary duty owed bb Mrs. Namm to the Plaintiff.

VIII.   **RESPONSE AS TO COUNT VI (Successor Liability)**:

Deluxe has not done business since 2012. The fact that checks owed to the Judgment

Debtor were issued in the name of Deluxe does not change that fact. There is no basis to support

the fact that Deluxe is a "successor entity". It is difficult, if not impossible, to think of a

reasonable reason why Plaintiff would pursue Count IV in this case, knowing that Deluxe does

no business; the business was done exclusively by the Judgment Debtor after 2012.

WHEREFORE Defendants request that summary judgment be denied because there are

disputed issues of fact as to each and every claim raised by the Plaintiff.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by notice
of electronic filing via CM/ECF to John E. Page, counsel for Plaintiff (jpage@sflp.law) and
Bernice C. Lee, counsel for Plaintiff (blee@sflp.law), and to those other parties registered to
receive such service on May 3, 2017.

/s/ Agustin R. Benitez
AGUSTIN R. BENITEZ, ESQUIRE
BENITEZ LAW GROUP, P.L.
Florida Bar # 278130
1223 East Concord Street
Orlando, Florida 32803
(407) 894-5000
(407) 896-8061 (fax)
Primary E-Mail: *Service@ARBenitez.com*
Secondary E-Mail: *Gus@ARBenitez.com*